# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN CRAIG BURNETT, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. CIV 17-462-RAW-KEW |
| JOE M. ALLBAUGH, DOC Director, | ) ) ) |
| Respondent. | ) ) |

## OPINION AND ORDER

This action is before the court on Respondent's motion to dismiss Petitioner's petition for a writ of habeas corpus as barred by the statute of limitations (Dkt. 1). Petitioner, a pro se prisoner in the custody of the Oklahoma Department of Corrections is incarcerated at Davis Correctional Facility in Holdenville, Oklahoma. He is challenging his life sentence for First Degree Murder in Tulsa County District Court Case No. CF-1993-1331 (Count 1).

Respondent alleges the petition was filed beyond the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996, codified at 28 U.S.C. § 2244(d) (AEDPA). Petitioner has filed a response to Respondent's motion (Dkt. 11).

The following dates are pertinent to the motion to dismiss:

| | |
|---|---|
| 04/26/1994 | Petitioner was sentenced pursuant to his plea of guilty to the crimes of Count 1, First Degree Murder, and Count 2, Larceny of a motor vehicle. |
| 05/02/1994 | Petitioner's Judgment and Sentence on Count 1 was entered. |
| 05/12/1994 | Petitioner's Judgment and Sentence became final ten days after entry of his plea, because he did not move to withdraw his plea. |
| 08/01/1995 | Petitioner filed an application for post-conviction relief in the Tulsa County District Court, addressing only his conviction in Count 2, Larceny of an Automobile. |
| 10/12/1995 | The state district court denied Petitioner's application for post-conviction relief. |

| | |
|---|---|
| 12/29/1995 | The Oklahoma Court of Criminal Appeals affirmed the denial of Petitioner's application for post-conviction relief in Case No. PC-1995-1232. |
| 04/03/2017 | Petitioner filed a second application for post-conviction relief in the state district court, addressing his conviction in Count 1, First Degree Murder. |
| 07/07/2017 | The district court denied Petitioner's second application for post-conviction Relief. |
| 07/28/2017 | Petitioner filed a petition in error and brief in support with the Oklahoma Court of Criminal Appeals, seeking appellate review of the denial of his second post-conviction application. |
| 09/13/2017 | The denial of Petitioner's second post-conviction application was affirmed in Case No. PC-2017-785. |
| 10/27/2017 | Petitioner filed this habeas corpus petition. |

Section 2244(d) provides that:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). The one-year limitations period also applies to § 2241 habeas corpus actions. *Burger v. Scott*, 317 F.3d 1133, 1138 (10th Cir. 2003).

The record shows Petitioner pleaded guilty to the crime of First Degree Murder (Count 1) on April 26, 1994, and his Judgment and Sentence for Count 1 was entered on May 2, 1994. He did not seek to timely withdraw his guilty plea or seek an appeal to the Oklahoma Court of Criminal Appeals, therefore, the conviction became final on May 12, 1994, ten days after entry of the Judgment and Sentence. (Dkt. 10-1 at 6-10). *See* Rule 4.2, *Rules of the Court of Criminal Appeals*, Okla. Stat. tit. 22, Ch.18, App.

Because Petitioner's conviction became final before enactment of the AEDPA, the one-year limitations period began on the AEDPA's effective date of April 24, 1996, and expired on April 24, 1997. *See Serrano v. Williams*, 383 F.3d 1181, 1183 (10th Cir. 2004) (citing *United States v. Hurst*, 322 F.3d 1256, 1261 (10th Cir. 2003) (establishing April 24, 1997, as end of statutory grace period)). Petitioner's petition was not filed by the April 24, 1997, deadline, therefore, it is time-barred under 28 U.S.C. § 2244(d)(1)(A).[1]

Petitioner alleges as his sole ground for relief that the State breached its plea agreement with him. He specifically claims the Pardon and Parole Board's policies changed after he entered his plea, and those changes have rendered his possibility of parole unrealistic. Because he has no meaningful chance of parole, he claims his plea agreement, whereby he entered a guilty plea to murdering his wife in exchange for a life sentence, has been breached. He requests relief in the form of a sentence modification to either a suspended sentence or to a sentence of 45 years.

Petitioner argues that he could not have discovered the factual predicate of his claim prior to December 2016, when he received the parole investigator's report. He asserts the report shows he no longer has the possibility of being paroled. Contrary to this assertion,

---

[1] Petitioner did not initiate his post-conviction proceedings until after the one-year limitations period had expired, so there is no statutory tolling. *See May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003).

3

however, the report clearly shows that Petitioner is next scheduled for parole consideration on December 1, 2019 (Dkt. 1 at 19).

Petitioner presents numerous allegations about how the parole process has changed to his detriment and presumably that he was unaware of these changes prior to December 2016. He claims that at the time of his plea: (1) he was to be considered for parole every year, instead of every three years; (2) he was to personally appear before the Pardon and Parole Board; (3) parole consideration was based upon his behavior while incarcerated, not his crime; (4) he was eligible for transfer to a minimum security facility, but no longer is eligible; (5) victims were not permitted to protest his parole consideration, nor was the district attorney allowed to have any input, but now they may; (6) he did not have to provide proof of a place to live or employment as a parole consideration, but now it is required; (7) there was a method of pre-parole which no longer an option; (8) the parole statutes have changed many times over the years; (9) the Pardon and Parole Board was composed of a cross-section of society, but now is composed of former law enforcement officers and a former Tulsa County District Court judge; (10) the current governor will not approve parole for any violent offender; and (11) the Department of Corrections no longer maintains work evaluations or certificates from inmates' records (Dkt. 2 at 10-11). Because Petitioner claims he has essentially no chance of being paroled, he contends the State has breached its plea agreement with him.

Respondent has provided records from the Pardon and Parole Board concerning Petitioner's parole considerations. He was first considered for parole on a malicious injury to property conviction in July 1994 (Dkt. 10-6). As shown on docket, the victim's brother and father both protested Petitioner's parole, and he was denied parole. Petitioner thus knew victims' representatives could appear and protest.

4

Petitioner again was considered for parole on the malicious injury to property conviction in September 1995, and the victim's representative appeared (Dkt. 10-7 at 1). The district attorney also provided a narrative of the crime. *Id*. at 2. Petitioner's work performance and educational progress were included as part of the information received by the Pardon and Parole Board. *Id.* at 3. The recommendation was negative, based upon the circumstances of Petitioner's crime. *Id*. at 4-5. Contrary to Petitioner's assertions, he plainly knew in 1995 that victims or their representatives and the district attorney could provide input regarding the parole decision and that his prison work record and accomplishments, as well as the circumstances of his crimes, could be considered in reaching a parole decision.

Petitioner was considered for parole on the murder conviction in December 2010 (Dkt. 1 at 12). Again, the district attorney's version of the crime was included, as were Petitioner's misconduct and prior work performance information. The negative parole recommendation was based upon Petitioner's 18 prison misconduct reports, three of which had occurred in the previous nine months.

Petitioner's next parole docket was in December 2013 (Dkt. 10-8). As shown on the first page of the report, his next date for parole consideration was set for December 2016. The district attorney's version of Petitioner's crime was included, as well as Petitioner's misconduct record and his accomplishments (Dkt. 1 at 16). The investigator recommended parole for Petitioner, based upon his prison history for the previous three years, however, the Board denied parole. The Court notes the fact that Petitioner's two parole hearings on the murder conviction occurred three years apart, demonstrating he knew there would not be an annual parole hearing.

Petitioner's last parole consideration occurred in December 2016 (Dkt. 1 at 29). Petitioner's next parole hearing date was shown to be December 2019. The district

attorney's version was included, as were Petitioner's misconduct history and his accomplishments. The investigator recommended denial of parole based upon the heinous nature of the crime, and the Board denied parole (Dkt. 1 at 22).

These records clearly show that as early as 1994, Petitioner knew that victims or their representatives, along with the district attorney, could provide input for the parole decision. He also was aware that his prison work record and accomplishments would be considered, as well as the circumstances of his crimes. He knew in December 2013 that he would not be considered for parole again until December 2016, and he is aware that his next opportunity for parole consideration is December 2019.

To the extent Petitioner is claiming he had no knowledge of how parole procedures would affect his likelihood of being paroled, the record clearly shows he knew the factual predicate of this claim by December 2013 at the latest, and probably as early as July 1994. He, however, failed to file this habeas petition until October 27, 2017. The Court, therefore, finds Petitioner has failed to meet the requirements of 28 U.S.C. § 2244(D), and this petition is barred by the statute of limitations.

The Court further finds that even if Petitioner could avoid the statute of limitations, his claim is not cognizable on habeas review. Although he has presented his claim as a breach of his plea agreement, he actually is complaining of his repeatedly being denied parole. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

Finally, the Supreme Court has held that the question of whether retroactive changes in parole procedures violate the ban on *ex post facto* laws is "whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California*

*Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995). Petitioner was sentenced to life imprisonment, and the length of that sentence has not changed. The Tenth Circuit Court of Appeals holds that no federal *ex post facto* restriction is implicated when a State modifies its parole procedures, even if such modification results in parole being harder to achieve or hearings less frequent. *Henderson v. Scott*, 260 F.3d 1213, 1216-17 (10th Cir. 2001); *see also Hunter v. Beck*, No. 07-7027, 244 F. App'x 848, 852 (10th Cir. July 3, 2007) (unpublished) (Elimination of annual parole hearings in favor of every three years did not deny due process or implicate *ex post facto* principles. "Without an expectation of liberty created by [Oklahoma], no process is due and the [Oklahoma] Parole Board may choose to handle its recommendations to the governor . . . as it sees fit without violating due process.")

The Court further finds Petitioner has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also* 28 U.S.C. § 2253(c). Therefore, Petitioner is denied a certificate of appealability. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**ACCORDINGLY,** Respondent's motion to dismiss time-barred petition (Dkt. 10) is GRANTED, this action is, in all respects, DISMISSED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 27th day of September 2018.

**Dated this 27th day of September, 2018.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma